WHITE, J.,
delivered the opinion of the Court, to the following effect:
The first question intended to be raised, namely, whether Edward Slater was a citizen, is supposed to be too clear to require discussion. The great question in the case is, whether this can be taken advantage of after Indictment found.
Eet it be remembered that this is not merely the case of a prosecution against a person charged with gaming, in which there is not much danger of a prosecution being turned into persecution ; nor is it merely a question whether an Indictment found by a man of good character, but not a citizen, can, for that exception, be abated ? No ! the principle we are now called on to decide, extends itself much ^further. The authority produced, and the reasoning offered in support of the Indictment, shew that it embraces every species of offence for which an Indictment can be found, from the most trifling misdemeanor up to murder, and high treason. The matter submitted to the consideration of the Court is in substance this : If an Indictment for any of those crimes, even the most atrocious, should be found by Indictors, who,, or either of whom, are men convicted of the most infamous offences, outlawed for treason, or for felony, or the subjects of a foreign nation actually at war with us, or if in the absence of the accused, they, or some of them, by corruption and deceit, by their own nomination, or by the nomination of some other wicked and malicious person, (as was Scarlet’s case, (a) had been put upon the Grand Jury, shall the accused thus basely prosecuted by infamous men, be compelled to hold up his hand at the bar, and submit to the expense, trouble, and infamy of a public trial ? or, shall he be permitted to come forward, and shew at once, that these men are by law declared to be unfit, disqualified and incapable of preferring such an accusation ? Surely under the first impressions made upon our reason, and common sense of justice, it would seem impossible to deny his right to do the latter. Ño man will say that it is not essential to the due administration of justice in criminal cases, to exclude from our accusing tribunals, as well as all others, all descriptions of persons who are deemed either incompetent, or unworthy to be trusted with their functions. But in vain shall the law do this, if the persons thus excluded may, by the carelessness of the returning officer, their own corrupt act, or otherwise, be obtruded upon them in defiance of the Eaw ; and if such obtrusion shall make their acts done, not only without legal authority, but against the prohibition of the Law, binding upon all whom they may accuse, although not present, and therefore utterly incapable of objecting at the time. But it is said the law is otherwise written, and however absurd, cruel, or unjust it may be, the Court are bound by it. But surely, before the Court will suffer itself to be driven into this palpable act of injustice, it will require some plain and respectable authority, to be produced in support of this dogma.
*An attempt has been made to support it by authority, and for that purpose the Statute of 11 Henry 4, (not now in force in this State,) and Lord Coke’s Commentary on it, (b) have been introduced : *120 from which it has been reasoned thus : if the party accused, could, by the Common Raw, have been admitted for this reason^ to quash an Indictment by plea, then was the Statute unnecessary ; and the decision mentioned under the Nota lector, in p. 33, would not have been “according- to the said Act,” but at Common Raw. But this Statute has gone further than the Common Raw; for by it such Indictments could only be quashed upon plea, but Rord Coke says expressly, that the Statute has made them absolutely void, and that the Court may quash them ex-officio, so that this is a sufficient reason for passing the Statute ; to aid and fortify the Common Raw. But, if this reasoning stood upon the footing on which those that use it have placed it, it would conclude nothing. Every one knows that it is common in England, in cases where doubts are entertained respecting the existing Raw, to pass declaratory Acts, and to proceed under those Acts, although they have not altered the old Raw a tittle And Rord Coke, in his Commentary on this very Act, does say, that it is in many respects, at least, declaratory of the Common Raw. So that although that Statute was passed, and although the Indictment spoken of in-the. Nota, should have been avoided by plea after that Act, and according to it, it does not follow that the same plea could not have been pleaded at the Common Raw.
But it is believed, that it can be demonstrated that when Rord Coke says that decision was made “according to the Statute,” he means merely that it was made in accordance with the spirit of it, and not that it was upon its authority only, and was not bottomed upon the Common Raw, and authorized by it. If that had been his meaning, this Nota would have presented a strange anomaly, a singular absurdity in the judicial proceedings of that country. What, all the judges sitting in solemn conference for several days, (as it appears from Hawkins they did,) to decide whether they should carry into effect a plain Act of Parliament, which could not be -misunderstood, and about which there could be no dispute!
*A very little attention will shew us that this case, decided by all the Judges, although it was decided according to the spirit of the Statute, was altogether out of its provisions, and was not, and could not be, decided upon its authority. And that whether by the Common Raw, the party indicted could, or could not avail himself of the incapacity of the Indictors by plea, was the great difficulty about which all the Judges consulted, and after this consultation, they did finally determine that he could.
That this Statute of 11 Henry 4, did not embrace the Indictment mentioned in the Nota, is evident from this. So far as it intended to remedy “a past mischief,” it annuls but one set of Indictments, and cannot by any latitude of construction, be extended beyond the proceedings of that Grand Jury, which it declares to have been corruptly formed. It describes those Indictments as inquest “of late taken,” that is, just before | the passage of the Act. But the Indictment on which the decision of the Judges took place, was made before the 5th of Henry 4, more than six years before the passage of the Act, and therefore was not, and could not be the one recited in, and annulled by it. Again, the Indictments annulled were found by persons “named to the Justices, without due return of the Sheriff, some of whom were outlawed, some had fled to sanctuary for treason, some for felony.” Whereas the only exception taken by the plea to the Indictment before Chief Justice Gascoign, and his Associates, was, that one of the Indictors had been “outlawed for felony, and another acquitted by the general pardon.” So that it is distinctly discerned to be a different Indictment from that recited in, and annulled by the Statute, and therefore, not within its provisions. His case being without the Statute, if it had then passed, the defendant was necessarily shut out from the benefit of its provisions, and driven to his plea at Common Raw, and unless he could support that, he could not quash the Indictment, corrupt and polluted as it was. It was upon that point that the Judges were in consultation, and not to ascertain whether a plain Act of Parliament could, or could not be pleaded. This authority, therefore, proves the converse of that which it was produced to prove.
In aid of this understandiug of the authority, are the opinions of Rord Hale, and of Hawkins, the most approved and respectable writers on Criminal Raw, and the general *practice of the Courts of Virginia, from the earliest period to this day, as well since, as before the year 1792, when it is alleged that this old Statute was repealed.
Hale, (c) in speaking of those who may be Indictors, says “they must be probi et legales homines, and therefore, if any one of the Indictors be outlawed, though in a personal action, it is a sufficient plea to avoid the Indictment. Sir William Withipole’s Case, and the Statute of 11 Henry 4, ch. 9, fortifies this,” distinctly shewing that he considered the decision to be at the Common Raw, and that the Statute did not give the remedy, but merely fortified it, or in other words was declaratory of it, and did indeed carry, the remedy, as we have seen farther than the Common Raw. And Hawkins, (d) after stating that it seemed to be the general opinion that this decision was rather grounded on the Statute, than on the Common Raw, observed “yet considering that the said resolution was given in the beginning of Hilary Term, and that the Parliament which made the said Statute was not holden before the beginning of the said Term, and therefore it is not likely that the said Statute was so soon made; and also considering that the said resolution was given by advice of all the Judges, who seem to have been consulted about the validity of the plea above mentioned at the Common Raw, and takes no manner of notice of any Statute, but only *121 of the Daw in general, it may deserve a question, whether such plea be not good at the Common Daw?” That the English Practitioners of Daw after the lapse of two or three hundred years, and pleading during all that time under the Statute, and having little inducement to trace the history of this matter up to remote antiquity, should take up a loose opinion that the plea was given by the Statute, is not wonderful. But, the great Historian of the Pleas of the Crown, whose peculiar duty it was to analyze and understand this subject, and his no less respectable successor, have declared themselves to be of a different opinion.
Under this view of the subject, the Court does not feel itself authorized in a case which so nearly concerns the interests and safety of the citizens of this State, by any thing offered „to it, in argument, to depart from the long established practice of the county, approved by the experience *of several ages, and supported by the concurrent opinions of those two great Commentators on Criminal Daw. This is the judgment of the Court.
“The Court doth decide by the unanimous opinion of the Judges present, that Edward Slater, in the record of the said proceedings mentioned, was not a good and lawful Grand Juror, and that the said Presentment is_ not a good one.”
Note (in edition of 1853). — The qualifications and disqualifications of Grand Jurors, so far as the same are provided for by our Statute, may be seen in 1 Bet. Code of 1819, ch. 75, § 1 and 2. It is obvious that the clause of the same Act § 12, which declares that, "no exceptions against any juror, on account of his age, or estate, or any other legal disability, shall be allowed after he is sworn," applies only to the petit jury, notwithstanding the broad terms "any juror."
Since the delivery of the above opinion, Mr. Chitty's “Practical Treatise on the Criminal Law” has been published. By referring to his 6th chapter, vol. 1, p. 307, the subject of the qualifications of Grand Jurors may be found. His authority is a full support of Judge White's opinion. "This necessity (he remarks) for the Grand Inquest to consist of men free from all objection, existed at Common Law. and was affirmed by the Statute 11 Henry 4. ch. 9, which enacts,” &c.
That the propel' mode, by which to except to the qualifications of the Grand Jurors, or of either of them after a Bill found, is by plea in abatement, is evident from the authorities. Chitty, after saying that a Grand Juror who lies under any of the disqualifications before enumerated, may be challenged by the prisoner before the Bill is presented, observes, “or if it be discovered after the finding, the defendant may plead it in avoidance, and answer over to the felony.” And he is supported by Hale, HawMns, and Coke. Again, after speaking of the Statute of 11 Henry 4, which avoids all Indictments so improperly found, he remarks .that a man outlawed on such a finding, may reverse the outlawry, on evidence that one of the jury was incompetent, and then proceeds. “It is clear that a defendant before issue joined, may plead the objection in avoidance; but if he take no such exception before his trial, it seems doubtful how far he can afterwards take advantage of it, except it can be verified by the records of the Court in which the Indictment is depending, as in case of one of the In-dictors in the same Court, in which case, any one as amicus curiae may inform the Court of the objection.” _

 Scarlet’s Case may be found in 3d part of Coke’s Institutes, p. 33.

 3 Co. Inst. p. 32-33.

 2 Hale’s Hist. P. C. 155.

 Hawkin’s P. 0. Book 2d, ch. 27, § 18.